# United States District Court
# Central District of California

| | |
|---|---|
| RAFAEL ARROYO, JR.,<br><br>Plaintiff,<br><br>v.<br><br>JORGE MELENDEZ, et al.,<br><br>Defendants. | Case No. 2:19-cv-04811-ODW (JPRx)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [23]** |

## I. INTRODUCTION

Plaintiff Rafael Arroyo ("Arroyo" or "Plaintiff") moves for default judgment ("Motion") against Defendants Jorge Melendez, Alicia Melendez, and Laguardia Enterprises, Inc. ("Defendants") for violations of the Americans with Disabilities Act ("ADA"). (Appl. for Default J. ("Mot.") 3, ECF No. 23.) For the reasons discussed below, the Court **GRANTS IN PART** Plaintiff's Motion.[1]

## II. BACKGROUND

Arroyo is a paraplegic who cannot walk and who uses a wheelchair for mobility. (Compl. ¶ 1, ECF No. 1.) On May 14, 2019, Arroyo went to the Sonsonate Grill at 4350 S. Avalon Blvd, Los Angeles, California, real property owned by Defendants, for

---

[1] After carefully considering the papers filed in support of the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

something to eat. (Compl. ¶¶ 2, 5, 10.) Arroyo alleges that the Sonsonate Grill did not have wheelchair-accessible paths of travel from the boundary of the site to the Sonsonate Grill entrance. (Compl. ¶ 13 n.1.) Arroyo further alleges that, although he did not personally confront the barrier,[2] the restroom at the Sonsonate Grill was not ADA-accessible in that the mirror was located too high. (Compl. ¶¶ 22 n.2, 23.) Arroyo asserts that the knowledge of these alleged barriers deters him from returning to the Sonsonate Grill but that he will return once the Sonsonate Grill is accessible. (Compl. ¶ 25.)

On June 3, 2019, Arroyo initiated this action against Defendants asserting two causes of action, for violation of the ADA and California Unruh Civil Rights Act ("Unruh"). (*See* Compl. ¶¶ 27–43.) On September 27, 2019, the Court declined to exercise supplemental jurisdiction over Arroyo's Unruh claim and dismissed that claim without prejudice. (Min. Order 9, ECF No. 22.) Upon Arroyo's request, the Clerk entered default against Defendant Laguardia Enterprises, LLC, on July 18, 2019, and against Defendants Jorge Melendez and Alicia Melendez on August 6, 2019. (Default by Clerk, ECF Nos. 13, 17.) Arroyo now moves for default judgment. (*See* Mot.)

Through his Motion, Arroyo seeks an order directing Defendants to "provide accessible paths of travel and accessible restroom at the property located at 4350 S. Avalon Blvd., Los Angeles, California,"[3] and an award of attorney's fees and litigation expenses in the amount of $5871.50. (Notice of Mot. 2, 13, ECF No. 23; Notice of Errata 1, ECF No. 25 (reducing the requested costs by $50).)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a). Fed. R. Civ.

---

[2] Arroyo states in his Complaint that he did not enter the restroom; however, in his Motion, Arroyo contends that he personally "went into the restroom" and "found the plumbing underneath the sink was not wrapped" and "the mirror was too high." (Mot. 1.)

[3] Although Arroyo alleges in his Complaint that dining tables did not comply with ADA Standards (Compl. ¶ 32), he does not raise that alleged barrier in the Motion. (*See* Mot. 6–9 (addressing paths of travel and restroom)). Accordingly, the Court does not consider the alleged barrier of dining tables.

P. 55(b). Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in FRCP 54(c) and 55, as well as Local Rules 55-1 and 55-2. Fed. R. Civ. P. 54(c), 55; C.D. Cal. L.R. 55-1, 55-2. Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and that (5) the defaulting party was properly served with notice, if required under Rule 55(b)(2). C.D. Cal. L.R. 55-1.

If these procedural requirements are satisfied, a district court has discretion to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "[A] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal 2002). In exercising discretion, a court must consider several factors (the "*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the [FRCP] favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Generally, after the Clerk enters default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true, except those pertaining to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

## IV. DISCUSSION

Arroyo has satisfied the procedural requirements and the *Eitel* factors weigh in favor of granting default judgment as to his ADA claim in part. Further, the Court finds

3

that the requested amount of attorneys' fees is excessive and unreasonable, and reduces the award accordingly.

**A.    Procedural Requirements**

Arroyo has complied with the procedural requirements for the entry of a default judgment. Arroyo's counsel asserts: (1) the Clerk entered default against Defendants (2) on the Complaint that Arroyo filed on June 3, 2019; (3) Defendants are not infants or incompetent persons; (4) Defendants are not covered under the Servicemembers Civil Relief Act; and (5) Arroyo served Defendants with notice of this Motion by first class United States mail on July 18, 2019. (Mot. 1; Decl. of Dennis Price ("Price Decl.") ¶¶ 2, 5–6, ECF No. 23-3.[4]) Thus, Arroyo satisfies the procedural requirements of FRCP 54(c) and 55, as well as Local Rule 55-1.

**B.    *Eitel* Factors**

Once the procedural requirements are satisfied, a district court must consider the *Eitel* factors in exercising its discretion to enter default judgment. The Court finds that the factors favor granting entry of default judgment against Defendants as to Arroyo's ADA claim for a non-compliant restroom mirror, but not for paths of travel from the boundary of the site to the Sonsonate Grill entrance.

*1. Possibility of Prejudice to Plaintiff*

The first *Eitel* factor asks whether the plaintiff will suffer prejudice if a default judgment is not entered. *Eitel*, 782 F.2d at 1471. Denial of default leads to prejudice when it leaves a plaintiff without a remedy or recourse to recover compensation. *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010); *PepsiCo*, 238 F. Supp. 2d at 1177. Defendant has failed to appear or participate in this action. Absent entry of default judgment, Arroyo is without recourse to recover. Accordingly, this factor weighs in favor of default judgment.

---

[4] The "Declaration of Dennis Price" is signed by Russell Handy. (*See* Price Decl. at 6.)

*2. Substantive Merits & 3. Sufficiency of the Complaint*

The second and third *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (alteration in original) (quoting *PepsiCo*, 238 F. Supp. 2d at 1175). To weigh these two factors, the Court must evaluate the merits of Arroyo's ADA cause of action.

"Title III of the ADA prohibits discrimination on the basis of disability in the 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . .'" *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 904 (9th Cir. 2011). As relevant here, discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). To succeed on his ADA claim, Arroyo must establish that (1) he is "disabled within the meaning of the ADA," (2) Defendants "own[], lease[], or operate[] a place of public accommodation," (3) Defendants denied Arroyo public accommodation because of his disability, (4) Sonsonate Grill "presents an architectural barrier prohibited under the ADA," and (5) "the removal of the barrier is readily achievable." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007–08 (C.D. Cal. 2014) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007)).

*First*, under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The ADA lists walking as a "major life activit[y]." *Id.* § 12102(2)(A). Arroyo alleges that he is a "paraplegic who cannot walk and who uses a wheelchair for mobility." (Compl. ¶ 1.) Here, Arroyo has established that he is disabled within the meaning of the ADA.

*Second*, the ADA specifically lists restaurants as public accommodations. 42 U.S.C. § 12181(7)(B). Property owners are charged with ensuring compliance with the ADA. *Id.* § 12182(a). Arroyo alleges that the Sonsonate Grill is a "facility open to the public, a place of public accommodation, and a business establishment." (Compl. ¶ 11.)

Arroyo also alleges that Defendants Jorge Melendez and Alicia Melendez own the real property on which Sonsonate Grill is located and that Defendant Laguardia Enterprises Inc. owns Sonsonate Grill at that location. (Compl. ¶¶ 2–5.) Accepting these allegations as true, Defendants own a place of public accommodation subject to Title III of the ADA.

As to the *third* and *fourth* factors, "a public accommodation shall maintain . . . facilities . . . that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R. § 36.211(a). Arroyo contends the "lack of accessible paths of travel and restroom facilities" present unlawful barriers that violate the ADA. (Mot. 6.)

### Paths of Travel

Arroyo alleges generally in his Complaint that the paths of travel from the boundary of the site to the Sonsonate Grill entrance are not ADA compliant. (Compl. ¶ 13 n.1.) Arroyo argues more specifically in his Motion that Sonsonate Grill has two potential entrances, a side entrance and a front entrance, neither of which is accessible to him. (Mot. 6–9.)

The standards governing compliance with the ADA are set forth in the ADA Accessibility Guidelines ("ADAAG"), which is "essentially an encyclopedia of design standards." *Oliver*, 654 F.3d at 905. The applicable ADAAG standard relating to accessible routes provides that public accommodations must provide "at least one accessible route" from the site arrival point to the building entrance. 2010 ADAAG § 206.2.1.[5] Thus, to be ADA-compliant, at least one of the two potential entrances must provide an accessible route.

Regarding the side entrance, Arroyo argues the unramped step and narrow gate prevent wheelchair access at the side gate. (Mot. 1, 6.) The minimum width of an accessible route must be at least 36 inches but may be reduced to 32 inches in width for

---

[5] 2010 ADAAG section 206.2.1 provides "[a]t least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve."

6

short spans or for gates and doors. 2010 ADAAG §§ 403.5.1 (paths), 404.2.3 (gates). Arroyo submits evidence that the side entrance gate is only 22 inches in width. (Decl. of Evens Louis ("Louis Decl.") ¶ 3, ECF No. 23-5.) Accordingly, the side entrance does not satisfy the requirement for an accessible route.

Regarding the front entrance, Arroyo contends it is inaccessible because it requires travel in the vehicular path. (Mot. 6–9; Louis Decl. ¶ 4 ("The other way of entering the property from the public sidewalk was to travel up the driveway and within the vehicular traffic lanes.").) However, "[t]he ADA standards permit accessible routes through parking lots to use vehicular lanes." *Baskin v. Hughes Realty, Inc.*, 25 Cal. App. 5th 184, 200 (2018) (citing California District Court cases and discussing that "several courts have construed the ADA standards to permit routes through parking lots that make use of vehicular lanes."); *see also* 2010 ADAAG Advisory 206.2.1(2) ("Access from site arrival points may include vehicular ways."). Further, the ADAAG provides an exception to the requirement for an accessible route: "[a]n accessible route shall not be required between site arrival points and the building . . . if the only means of access between them is a vehicular way not providing pedestrian access." 2010 ADAAG § 206.2.1(2). From the photographs Arroyo submits, this appears to be the case. (*See* Louis Decl. ¶ 6, Ex. 4 at 4–8, ECF No. 23-6 (photographs).) Arroyo's expert's declaration further supports this conclusion where he states that the route to the front entrance had "no separated pedestrian path of travel." (Louis Decl. ¶ 4.)[6] As such, Arroyo has failed to show that the front entrance is inaccessible.

Accordingly, default judgment as to Arroyo's ADA claim based on paths of travel is not appropriate.

---

[6] Nor does the exception to the exception apply, as Arroyo argues. (Mot. 8.) Arroyo's photographs reflect no portion of the vehicular way provides for pedestrian travel, such as might be found in a shopping mall parking lot. *See* 2010 ADAAG Advisory § 206.2.1(2) ("Where a . . . portion of a vehicular way[] is provided for pedestrian travel, such as within a . . . shopping mall parking lot, this exception does not apply."); (*see* Louis Decl. Ex. 4 at 4–8 (photographs)).

### Restroom

Arroyo argues the restroom is not ADA compliant because the sink plumbing is not wrapped and the mirror is too high. (Mot. 9.) In his Complaint, Arroyo alleges only that the restroom mirror is too high and that "other issues with the restroom" may exist. (Compl. ¶ 22 n.1.) This allegation does not provide Defendants with sufficient notice that Arroyo would claim a violation of the ADA as to the sink plumbing. *See Oliver*, 654 F.3d at 909 ("[A] plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself."). Thus, the sink pluming does not provide a basis for default judgment.

Regarding mirror height, "[m]irrors located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches . . . maximum above the finish floor or ground." 2010 ADAAG § 603.3. Arroyo submits evidence that the lowest edge of the reflecting surface of the mirror was forty-four inches and argues that this prevented him from seeing his entire face, which created difficulty and frustration for him. (Louis Decl. ¶ 5; Mot. 2.) Accepting as true Arroyo's allegations and evidence, the non-compliant mirror height posed an architectural barrier that denied him a public accommodation because of his disability.

*Fifth*, Arroyo alleges the barriers are easily removed without much difficulty or expense. (Compl. ¶ 24.) Installing a full-length bathroom mirror is considered readily achievable. 28 C.F.R. § 36.304(b)(16); *see Vogel*, 992 F. Supp. 2d at 1011. Thus, the Court finds that removal of the barrier, the mirror mounted at a non-compliant height, is "readily achievable."

Accepting as true the well-pleaded factual allegations in the complaint and considering the evidence presented with the Motion, Arroyo has established a violation of the ADA in that the restroom mirror was mounted above ADA-compliant height. As such, the second and third *Eitel* factors favor default judgment.

### 4. Amount at Stake

The fourth *Eitel* factor balances the amount of money at stake with the "seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *Eitel*, 782 F.2d at 1471. The amount at stake must be proportionate to the harm alleged. *Landstar*, 725 F. Supp. 2d at 921. At issue here, "[t]he enforcement provisions of Title III provide only for injunctive relief. Damages are not available to individuals." *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1136 (9th Cir. 2002). Arroyo seeks injunctive relief to make aspects of Defendants' property ADA-compliant, not monetary damages. (Notice of Mot. 2.) As such, the relief sought is proportionate to Defendants' conduct and appropriate on default judgment. Consequently, this factor favors entry of default judgment.

### 5. Possibility of Dispute

The fifth *Eitel* factor considers the possibility that material facts are in dispute. *PepsiCo*, 238 F. Supp. 2d at 1177. Because the allegations in Arroyo's Complaint are presumed true, Defendants' failure to appear in this action results in a finding that "no factual disputes exist that would preclude entry of default judgment." *Vogel*, 992 F. Supp. 2d at 1013. Accordingly, this factor favors entry of default judgment.

### 6. Possibility of Excusable Neglect

The sixth *Eitel* factor considers the possibility that a defendant's default is the result of excusable neglect. *PepsiCo,* 238 F. Supp. 2d at 1177. Here, Arroyo served Defendants with the Complaint and also the Motion for Default Judgment. Defendants were thus on notice and failed to respond. No facts indicate the possibility of excusable neglect and this factor favors entry of default judgment.

### 7. Policy Favoring Decisions on the Merits

"[D]efault judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). However, where the defendant fails to answer the plaintiff's complaint, "a decision on the merits [is]

impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. As Defendants failed to appear or otherwise respond, a determination on the merits is impossible. Accordingly, this factor does not preclude entry of default judgment.

On balance, the *Eitel* factors support entry of default judgment on Arroyo's ADA cause of action, based on the noncompliant restroom mirror height. As such, the Court **GRANTS** Arroyo's Motion.

### C.  Attorneys' Fees and Costs

Arroyo's attorney, Dennis Price, requests $5251.50 in fees and $620.00 in costs. (Mot. 13; Price Decl. ¶ 7, p.7 (Billing Summary); Notice of Errata 1.)[7] Attorney Price submits a billing statement with his declaration in support of the fee request.[8] (Price Decl. at 7–9.)

As Arroyo's ADA claim is meritorious as to the noncompliant restroom mirror, he is the prevailing party and may recover attorneys' fees under 42 U.S.C. § 12205. Arroyo may also recover costs as provided in 29 U.S.C. § 1920, FRCP 54(d)(1) and Local Rule 54-2. In an application for default judgment, where attorneys' fees are sought pursuant to a statute, fees are generally calculated according to the schedule provided by the court. C.D. Cal. L.R. 55-3. Attorneys may request fees in excess of the schedule, as Arroyo's attorneys have done. C.D. Cal. L.R. 55-3. When a party makes such a request, "the court is obligated to calculate a 'reasonable' fee in the usual manner [using the 'lodestar method'], without using the fee schedule as a starting point." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152 (9th Cir. 2018). The "lodestar" method multiplies the hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts should exclude hours that are excessive, redundant, or not reasonably expended. *Id.* at 434. It is in the court's discretion to

---

[7] Arroyo originally requested $5251.50 in fees and $670 in costs, for a total award of $5921.50. (Mot. 13.) He filed a Notice of Errata correcting the requested costs to $620, making the total requested award $5871.50. (Notice of Errata 1.)

[8] Arroyo's papers are inconsistent regarding the requested fee award, which does not align with the billing statement provided. Accordingly, the Court accepts the amount Arroyo requests in the Motion, $5251.50, as the initial lodestar. (*See* Mot. 13.)

determine the reasonableness of the fees requested. *Id.* at 433. A court may consider a number of pertinent factors in determining the reasonableness of an attorneys' fees award. *Langer v. Butler*, No. SA CV 19-0829-DOC (JDEx), 2019 WL 6332167, at *8 (C.D. Cal. Aug. 27, 2019) (citing *Quesada v. Thomason*, 850 F.2d 537, 539 n.1 (9th Cir. 1988) (listing twelve factors)).[9]

The three attorneys billing in this matter are Mark Potter ($595), Russell Handy ($595), and Phyl Grace ($550). (*See* Price Decl. at 8–9 (time entries).) The Court recognizes the ability and credentials of each attorney in their field. (*See* Price Decl. ¶¶ 8–10 (qualifications).) However, the same attorneys billing here requested substantially lower rates of $425 in a similar case filed just one month earlier involving parking and restroom ADA access violations on default judgment. *See Langer*, 2019 WL 6332167, at *8 (requesting rates of $425 for Potter, Handy, and Grace and $350 for Price). Accordingly, the Court finds the requested rates of $595 and $550 excessive.

Further, while represented by the same firm, Arroyo has filed hundreds of cases within the last five years in the Central District of California alone, and is considered a high-frequency litigant under California law. (*See* Decl. of Rafael Arroyo ¶¶ 2–4, ECF No. 21-1.) Notably, Arroyo's attorneys' have filed thousands of ADA cases in this district using "carbon-copy complaints and 'entirely boilerplate' litigation." *Tate v. Deoca*, No. CV 14-08738-SJO (MRWx), 2018 WL 5914220, at *8 (C.D. Cal. July 31, 2018) (citing cases and cautioning against awarding counsel a windfall for such copy-and-paste work); (*see* Price Decl. ¶¶ 8–9 (noting Attorneys Potter and Handy have litigated over 3000 ADA cases). This case appears no different, with billing records that explicitly reflect the use of templates. *See* Price Decl. at 9 (billing statement, noting

---

[9] The factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of accepting the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Quesada*, 850 F.2d at 539 n.1.

"reviewed packet . . . to ensure no template remnants"); *see also id.* at 6 (Decl. of "Dennis Price" signed by Russell Handy). Attorneys Potter, Handy, and Grace each have extensive specialized experience but are billing here for template-work that could have been done by junior attorneys. The Court recognizes the time necessary to prepare and file materials in this matter and to investigate and identify the proper defendants, but this litigation is not particularly complex or laborious, nor has it been at all litigious as Defendants failed to answer; indeed, this matter has proceeded in a fairly straightforward matter over merely a few months. Finally, nothing indicates that Arroyo's attorneys have been precluded from accepting other employment due to the acceptance of this case.

In light of the redundancy of work, familiarity with Arroyo, expertise in the area of law, straightforward nature of the case involved for the extensively-trained attorneys, and the fact that Arroyo prevails on the ADA claim only as to the restroom mirror height, the Court finds the rates and hours set forth in the billing summary excessive. The Court accordingly reduces the amount of attorneys' fees by 50%, to $2625.75. *See Langer*, 2019 WL 6332167, at *8 (reducing requested fees by 50% for reasons similar to the above); *Tate*, 2018 WL 5914220, at *8 (same).

Regarding costs, the Court accepts Attorney Price's declaration, together with the Notice of Errata, that Arroyo incurred litigation expenses of $620.00. (*See* Price Decl. at 7; Notice of Errata 1.) Thus, the Court awards costs of $620.00.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Motion for Default Judgment. (ECF No. 23.) Defendants shall make the restroom mirror ADA-compliant. The Court awards Arroyo $2625.75 in fees and $620.00 in costs.

**IT IS SO ORDERED.**

February 21, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**